UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHEN HISER, individually and on behalf of all others similarly situated | § § § | Docket No. __1:18-cv-1056__ |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| NZONE GUIDANCE, LLC | § § § | FLSA COLLECTIVE ACTION |
| Defendant. | § § | |

**ORIGINAL COMPLAINT**

1. Stephen Hiser (Hiser or Plaintiff) brings this lawsuit to recover unpaid overtime wages and other damages from Nzone Guidance, LLC (Nzone or Defendant) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. During the relevant period, Nzone utilized the services of MWD Operators like Hiser to work on its behalf.

3. Many of the MWD Operators Nzone employed, including Hiser, were staffed to Nzone by third-party entities.

4. Hiser, and the other MWD Operators like him who worked for, or on behalf of Nzone, regularly worked more than 40 hours a week.

5. But Hiser and the other MWD Operators like him were not paid overtime.

6. Instead of paying overtime as required by the FLSA, Nzone improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation of the FLSA.

7. Hiser brings this collective action to recover the unpaid overtime wages and other damages owed to him and other MWD Operators like him.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Nzone conducts substantial business operations in this District and Division.

11. Nzone maintains its corporate headquarters in this District and Division.

## THE PARTIES

12. From approximately April 2017 until November 2018, Hiser worked for Nzone as an MWD Operator.

13. Throughout his employment, Nzone paid Hiser a day-rate with no overtime compensation and classified him as an independent contractor.

14. Hiser's consent to be a party plaintiff is attached as <u>Exhibit A</u>.

15. Hiser brings this action on behalf of himself and all other similarly situated MWD Operators who worked for, or on behalf of Nzone, who were classified as independent contractors and paid a day-rate with no overtime compensation.

16. Hiser and the MWD Operators like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

17. The class of similarly situated employees sought to be certified is defined as follows:

> **All MWD Operators that worked for Nzone while classified as independent contractors and paid a day-rate during the last 3 years.**

18. **Nzone Guidance, LLC** is a Texas limited liability corporation and may be served by serving its registered agent for service of process, Brad Vaughn, at 1407 Faustino Cove, Leander, Texas 78641, or wherever he may be found.

## COVERAGE UNDER THE FLSA

19.     At all times hereinafter mentioned, Nzone has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.     At all times hereinafter mentioned, Nzone has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     At all times hereinafter mentioned, Nzone has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

22.     Nzone has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

23.     Nzone's annual gross volume of sales made or business done has exceeded $1,000,000.00 in each of the past three years.

24.     At all relevant times hereinafter mentioned, Hiser and the other MWD Operators like him were engaged in commerce or in the production of goods for commerce.

25.     At all relevant times hereinafter mentioned, Nzone treated Hiser (and each of the MWD Operators like him) as an employee and uniformly applied its day-rate pay practice to Hiser and the MWD Operators like him.

26.     The misclassification of Hiser and the other MWD Operators like him as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

## FACTS

27.     Nzone is an oil and gas service company providing directional drilling and MWD services to oil and gas exploration companies

3

28. To provide services to many of its customers, Nzone retains workers (including MWD Operators) to perform services on its behalf.

29. During the relevant period, Nzone contracted with third-party entities to provide it with oilfield personnel to work for it or on its behalf, including MWD Operators like Hiser.

30. Nzone and the third-party entities who staffed oilfield personnel to Nzone to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

31. Nzone and the third-party entities who staffed oilfield personnel to Nzone to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

32. Nzone is a joint employer of the oilfield personnel staffed to it by the third-party entities.

33. Many of the MWD Operators staffed to Nzone, including Hiser, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed Putative Class.

34. Even if their job titles and precise job duties differed, Nzone subjected Hiser and the other MWD Operators like him to the same or similar illegal pay practices for similar work.

35. Specifically, Nzone classified all similarly situated MWD Operators as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

36. Nzone uniformly failed to pay overtime for the overtime hours Hiser and the other MWD Operators like him worked.

37. For example, from approximately April 2017 until November 2018, Hiser worked exclusively for Nzone as an MWD Operator.

38. Throughout his employment, Nzone classified Hiser as an independent contractor and paid him on a day-rate basis.

39. Nzone directed Hiser to work 12 (or more) hours a day for as many as seven days in a week.

40. Hiser worked well in excess of 40 hours each week while employed by Nzone, often for weeks at time.

41. The work Hiser performed was an essential part of Nzone core business.

42. During Hiser's employment with Nzone and while he was classified as an independent contractor, Nzone exercised control over all aspects of his job.

43. Nzone did not require any substantial investment by Hiser for him to perform the work required of him.

44. Nzone controlled Hiser's opportunity for profit and loss by dictating the days and hours he worked and the rate he was paid.

45. Hiser was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

46. Hiser worked exclusively for Nzone as an independent contractor from approximately April 2017 through November 2018.

47. While working for Nzone, Nzone controlled all the significant or meaningful aspects of the job duties performed by Hiser.

48. Nzone exercised control over the hours and locations Hiser worked, tools and equipment used, and rates of pay received.

49. Even though Hiser often worked away from Nzone's offices without the presence of a direct supervisor employed by Nzone, Nzone still controlled significant aspects of Hiser's job activities by enforcing mandatory compliance with its policies and procedures.

50. No real investment was required of Hiser to perform his job.

51. More often than not, Hiser utilized equipment provided by Nzone to perform his job

duties.

52. In fact, Nzone boats that "Nzone Guidance MWD tools are complex electronic devices to measure the inclination and azimuth of the wellbore."[1]

53. Nzone's MWD tools cost hundreds of thousands of dollars to purchase and maintain.

54. Nzone's MWD tools require expensive batteries, that Nzone purchases, maintains, and provides for the jobs Hiser and the MWD Operators like him work on.

55. Hiser did not provide the significant equipment he worked with on a daily basis.

56. Nzone or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Hiser worked.

57. Hiser did not incur operating expenses like rent, payroll, marketing, and insurance.

58. Hiser was economically dependent on Nzone during his employment with Nzone.

59. Nzone set Hiser's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Nzone.

60. Nzone directly determined Hiser's opportunity for profit and loss.

61. Hiser's earning opportunity was based on the number of days Nzone scheduled him to work.

62. Very little skill, training, or initiative was required of Hiser to perform his job duties.

63. Indeed, the daily and weekly activities of the MWD Operators were routine and largely governed by standardized plans, procedures, and checklists created by Nzone.

64. Virtually every job function was pre-determined by Nzone, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

---

[1] http://www.nzoneguidance.com/mwd-services.html.

65. The MWD Operators were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Nzone's policies, procedures, and directives.

66. Hiser performed routine job duties that were largely dictated by Nzone.

67. Hiser worked exclusively for Nzone from approximately April 2017 until November 2018.

68. Hiser was not employed by Nzone on a project-by-project basis.

69. In fact, while Hiser was classified as an independent contractor, he was regularly on call for Nzone and was expected to drop everything and work whenever needed.

70. All of the MWD Operators working for, or on behalf of Nzone, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the third-party entity they were staffed through.

71. All of the MWD Operators working for, or on behalf of Nzone, also worked similar hours and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

72. All of the MWD Operators working for, or on behalf of Nzone, all worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts (at a minimum) for weeks at a time, regardless of the third-party entity they were staffed through.

73. Instead of paying them overtime, Nzone paid Hiser and the other MWD Operators like him a day-rate and misclassified them as independent contractors.

74. Nzone denied Hiser and the other MWD Operators like him overtime for hours worked in excess of 40 hours in a single workweek.

75. Hiser and the other MWD Operators like him were never paid on a salary basis. They never received any guaranteed weekly compensation from Nzone irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single

day or week).

76. Nzone's policy of classifying Hiser and the other MWD Operators like him as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

77. It is undisputed that the MWD Operators are working long hours in the oilfield.

78. Because Hiser and the other MWD Operators like him were misclassified as independent contractors by Nzone, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

79. Nzone's day-rate system violates the FLSA because Hiser and the other MWD Operators like him did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

80. As set forth herein, Nzone has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

81. Nzone knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Hiser and the other MWD Operators like him overtime compensation.

82. Nzone's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

83. Accordingly, Hiser and the other MWD Operators like him are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

84. The illegal pay practices Nzone imposed on Hiser were likewise imposed on the other MWD Operators working for, or on behalf of Nzone, through third-party entities.

85. Numerous individuals were victimized by Nzone's pattern, practice, and policy which is in willful violation of the FLSA.

86. Numerous other individuals who worked with Hiser as MWD Operators, including those who worked through third-party entities, indicated they too were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

87. Based on his experiences and tenure with Nzone, Hiser is aware that such illegal practices were imposed on the members of the Putative Class.

88. Hiser and the other MWD Operators like him were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

89. Nzone's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the MWD Operators like Hiser.

90. Hiser's experiences are therefore typical of the other MWD Operators who worked for, or on behalf of, Nzone.

91. The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

92. Hiser has no interests contrary to, or in conflict with, the members of the Putative Class. Like each member of the Putative Class, Hiser has an interest in obtaining the unpaid overtime wages owed under federal law.

93. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

94. Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and Nzone will reap the unjust benefits of violating the FLSA.

95. Furthermore, even if some of the members of the Putative Class could afford individual litigation against Nzone, it would be unduly burdensome to the judicial system.

96. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Class and provide for judicial consistency.

97. Hiser's claims are similar to the claims of the other MWD Operators who worked for, or on behalf of, Nzone who were classified as independent contractors and paid a day-rate with no overtime compensation. Hiser and the other MWD Operators like him sustained damages arising out of Nzone's illegal and uniform employment policy.

98. Hiser knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

99. Even if the number of hours worked by the MWD Operators like Hiser varies, the proof and method for calculating damages is common.

100. Further, there is no detraction from the common nucleus of liability facts.

## JURY DEMAND

101. Hiser demands a trial by jury.

## RELIEF SOUGHT

102. WHEREFORE, Hiser prays for judgment against Nzone as follows:

   a. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all MWD Operators who worked for Nzone while classified as independent contractors and paid a day-rate during the last three years;

b.  For an Order pursuant to Section 16(b) of the FLSA finding Nzone liable for unpaid back wages due to Hiser and the MWD Operators like him for liquidated damages equal in amount to their unpaid compensation;

c.  For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
**Michael A. Josephson**
Texas State Bar No. 24014780
**Lindsay R. Itkin**
Texas State Bar No. 24068647
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
litkin@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**