UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHEN HISER and DANA ACE, individually and on behalf of all others similarly situated | § § § | Docket No. 1:18-CV-1056 |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| NZONE GUIDANCE, LLC | § § | FLSA COLLECTIVE ACTION |
| Defendant. | § § | |

# FIRST AMENDED COMPLAINT

1. Stephen Hiser ("Hiser") and Dana Ace ("Ace") (together, "Plaintiffs") brings this lawsuit to recover unpaid overtime wages and other damages from NZone Guidance, LLC ("NZone" or "Defendant") under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2. During the relevant period, NZone utilized the services of MWD Operators, like Hiser, and Directional Drillers, like Ace, to work on its behalf.

3. Many of the MWD Operators and Directional Drillers NZone employed, including Hiser and Ace, were staffed to NZone by third-party entities.

4. Hiser, Ace and the other MWD Operators and Directional Drillers like them who worked for, or on behalf of NZone, regularly worked more than 40 hours a week.

5. But Hiser, Ace, and the other MWD Operators and Directional Drillers like them were not paid overtime.

6. Instead of paying overtime as required by the FLSA, NZone improperly classified these workers as independent contractors and paid them a daily rate with no overtime compensation in violation of the FLSA.

7. Hiser and Ace bring this collective action to recover the unpaid overtime wages and other damages owed to them and other MWD Operators and Directional Drillers like them.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. NZone conducts substantial business operations in this District and Division.

11. NZone maintains its corporate headquarters in this District and Division.

## THE PARTIES

12. From approximately April 2017 until November 2018, Hiser worked for NZone as an MWD Operator.

13. Throughout his employment, NZone paid Hiser a day-rate with no overtime compensation and classified him as an independent contractor.

14. Hiser's consent to be a party plaintiff was filed on December 7, 2018 with Plaintiff's Original Complaint (Doc. 1).

15. From approximately April 2018 until December 2018, Ace worked for NZone as a Directional Driller.

16. Throughout his employment, NZone paid Ace a day-rate with no overtime compensation and classified him as an independent contractor.

17. Ace's consent to be a party plaintiff is attached hereto as <u>Exhibit A</u>.

18. Hiser and Ace bring this action on behalf of themselves and all other similarly situated MWD Operators and Directional Drillers who worked for, or on behalf of NZone, who were classified as independent contractors and paid a day-rate with no overtime compensation.

19. Hiser and the MWD Operators like him were paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

20. The first class of similarly situated employees sought to be certified is defined as follows:

> **All MWD Operators that worked for NZone while classified as independent contractors and paid a day-rate during the last 3 years.** ("MWD Class")

21. Ace and the Directional Drillers like him were also paid a flat amount for each day worked and did not receive overtime for all hours that they worked over 40 hours in a workweek in accordance with the FLSA.

22. The second class of similarly situated employees sought to be certified is defined as follows:

> **All Directional Drillers that worked for NZone while classified as independent contractors and paid a day-rate during the last 3 years.** ("DD Class")

23. **NZone Guidance, LLC** is a Texas limited liability corporation and has been served and appeared in this case.

## COVERAGE UNDER THE FLSA

24. At all times hereinafter mentioned, NZone has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25. At all times hereinafter mentioned, NZone has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26. At all times hereinafter mentioned, NZone has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

27. NZone has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers,

automobiles, and cell phones.

28. NZone's annual gross volume of sales made or business done has exceeded $1,000,000.00 in each of the past three years.

29. At all relevant times hereinafter mentioned, Hiser, Ace, and the other MWD Operators and Directional Drillers like them were engaged in commerce or in the production of goods for commerce.

30. At all relevant times hereinafter mentioned, NZone treated Hiser (and each of the MWD Operators like him) and Ace (and each of the Directional Drillers like him) as an employee and uniformly applied its day-rate pay practice to Hiser, Ace, and the MWD Operators and Directional Drillers like them.

31. The misclassification of Hiser, Ace, and the other MWD Operators and Directional Drillers like them as independent contractors does not alter their status as employees for purposes of this FLSA collective action.

## FACTS

32. NZone is an oil and gas service company providing directional drilling and MWD services to oil and gas exploration companies

33. To provide services to many of its customers, NZone retains workers (including MWD Operators and Directional Drillers) to perform services on its behalf.

34. During the relevant period, NZone contracted with third-party entities to provide it with oilfield personnel to work for it or on its behalf, including MWD Operators like Hiser and Directional Drillers like Ace.

35. NZone and the third-party entities who staffed oilfield personnel to NZone to work for or on its behalf jointly determine and share control over the terms and conditions of employment.

36. NZone and the third-party entities who staffed oilfield personnel to NZone to work

for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to these workers.

37. NZone is a joint employer of the oilfield personnel staffed to it by the third-party entities.

38. Many of the MWD Operators and Directional Drillers staffed to NZone, including Hiser and Ace, were paid on a day-rate basis, misclassified as independent contractors, and make up the proposed Putative Classes.

39. Even if their job titles and precise job duties differed, NZone subjected Hiser, Ace, and the other MWD Operators and Directional Drillers like them to the same or similar illegal pay practices for similar work.

40. Specifically, NZone classified all similarly situated MWD Operators and Directional Drillers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

41. NZone uniformly failed to pay overtime for the overtime hours Hiser, Ace, and the other MWD Operators and Directional Drillers like them worked.

42. For example, from approximately April 2017 until November 2018, Hiser worked exclusively for NZone as an MWD Operator. Similarly, from approximately April 2018 until December 2018, Ace worked exclusively for NZone as a Directional Driller.

43. Throughout their employment, NZone classified Hiser and Ace as independent contractors and paid them on a day-rate basis.

44. NZone directed Hiser and Ace to work 12 (or more) hours a day for as many as seven days in a week.

45. Hiser and Ace worked well in excess of 40 hours each week while employed by NZone, often for weeks at time.

46. The work Hiser and Ace performed was an essential part of NZone core business.

47. During Hiser and Ace's employment with NZone and while they were classified as independent contractors, NZone exercised control over all aspects of their jobs.

48. NZone did not require any substantial investment by Hiser or Ace for them to perform the work required of them.

49. NZone controlled Hiser and Ace's opportunities for profit and loss by dictating the days and hours they worked and the rate they were paid.

50. Hiser and Ace were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

51. Hiser worked exclusively for NZone as an independent contractor from approximately April 2017 through November 2018.

52. Ace worked exclusively for NZone as an independent contractor from approximately April 2018 until December 2018.

53. While working for NZone, NZone controlled all the significant or meaningful aspects of the job duties performed by Hiser and Ace.

54. NZone exercised control over the hours and locations Hiser and Ace worked, tools and equipment used, and rates of pay received.

55. Even though Hiser and Ace often worked away from NZone's offices without the presence of a direct supervisor employed by NZone, NZone still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

56. No real investment was required of Hiser or Ace to perform their jobs.

57. More often than not, Hiser and Ace utilized equipment provided by NZone to perform their job duties.

58. In fact, NZone boasts that "NZone Guidance MWD tools are complex electronic

devices to measure the inclination and azimuth of the wellbore."[1]

59. Similarly, NZone also boasts that it only "provide[s] state-of-the-art equipment for directional drilling."[2]

60. NZone's MWD and Directional Driller tools cost hundreds of thousands of dollars to purchase and maintain.

61. NZone's MWD and Directional Driller tools require expensive batteries, that NZone purchases, maintains, and provides for the jobs Hiser, Ace, and the MWD Operators and Directional Drillers like them work on.

62. Hiser and Ace did not provide the significant equipment they worked with on a daily basis.

63. NZone or the operator made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Hiser and Ace worked.

64. Hiser and Ace did not incur operating expenses like rent, payroll, marketing, and insurance.

65. Hiser was economically dependent on NZone during his employment with NZone.

66. Ace was economically dependent on NZone during his employment with NZone.

67. NZone set Hiser and Ace's rates of pay, his work schedule, and effectively prevented (or outright prohibited) them from working other jobs for other companies while they were working on jobs for NZone.

68. NZone directly determined Hiser and Ace's opportunities for profit and loss.

69. Hiser and Ace's earning opportunities were based on the number of days NZone

---

[1] http://www.NZoneguidance.com/mwd-services.html (last visited January 24, 2019).

[2] http://www.NZoneguidance.com/directional-drilling.html (last visited January 24, 2019).

7

scheduled them to work.

70. Very little skill, training, or initiative was required of Hiser or Ace to perform their job duties.

71. Indeed, the daily and weekly activities of the MWD Operators and Directional Drillers were routine and largely governed by standardized plans, procedures, and checklists created by NZone.

72. Virtually every job function was pre-determined by NZone, including the tools and equipment to use at a job site, the data to compile, the schedule of work, and related work duties.

73. The MWD Operators and Directional Drillers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow NZone's policies, procedures, and directives.

74. Hiser and Ace performed routine job duties that were largely dictated by NZone.

75. Hiser and Ace were not employed by NZone on a project-by-project basis.

76. In fact, while Hiser and Ace were classified as independent contractors, they were regularly on call for NZone and were expected to drop everything and work whenever needed.

77. All of the MWD Operators and Directional Drillers working for, or on behalf of NZone, perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person, regardless of the third-party entity they were staffed through.

78. All of the MWD Operators and Directional Drillers working for, or on behalf of NZone, also worked similar hours and were denied overtime as a result of the same illegal pay practice, regardless of the third-party entity they were staffed through.

79. All of the MWD Operators and Directional Drillers working for, or on behalf of NZone, all worked in excess of 40 hours each week and were often scheduled to work 12-hour shifts

(at a minimum) for weeks at a time, regardless of the third-party entity they were staffed through.

80. Instead of paying them overtime, NZone paid Hiser, Ace, and the other MWD Operators and Directional Drillers like them a day-rate and misclassified them as independent contractors.

81. NZone denied Hiser, Ace, and the other MWD Operators and Directional Drillers like them overtime for hours worked in excess of 40 hours in a single workweek.

82. Hiser, Ace, and the other MWD Operators and Directional Drillers like them were never paid on a salary basis. They never received any guaranteed weekly compensation from NZone irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

83. NZone's policy of classifying Hiser, Ace, and the other MWD Operators and Directional Drillers like them as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

84. It is undisputed that the MWD Operators and Directional Drillers are working long hours in the oilfield.

85. Because Hiser, Ace, and the other MWD Operators and Directional Drillers like them were misclassified as independent contractors by NZone, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

86. NZone's day-rate system violates the FLSA because Hiser, Ace, and the other MWD Operators and Directional Drillers like them did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

87. As set forth herein, NZone has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them

overtime.

88. NZone knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Hiser, Ace, and the other MWD Operators and Directional Drillers like them overtime compensation.

89. NZone's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

90. Accordingly, Hiser, Ace, and the other MWD Operators and Directional Drillers like them are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorneys' fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

91. The illegal pay practices NZone imposed on Hiser and Ace were likewise imposed on the other MWD Operators and Directional Drillers working for, or on behalf of NZone, through third-party entities.

92. Numerous individuals were victimized by NZone's pattern, practice, and policy which is in willful violation of the FLSA.

93. Numerous other individuals who worked with Hiser and Ace as MWD Operators and Directional Drillers, including those who worked through third-party entities, indicated they too were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

94. Based on their experiences and tenure with NZone, Hiser and Ace are aware that such illegal practices were imposed on the members of the Putative Classes.

95. Hiser, Ace, and the other MWD Operators and Directional Drillers like them were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

96. NZone's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the MWD Operators, like Hiser, or the Directional Drillers, like Ace.

97. Hiser's experiences are therefore typical of the other MWD Operators who worked for, or on behalf of, NZone.

98. Ace's experiences are therefore typical of the other Directional Drillers who worked for, or on behalf of, NZone.

99. The specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

100. Hiser and Ace have no interests contrary to, or in conflict with, the members of the Putative Classes. Like each member of the Putative Classes, Hiser and Ace have an interest in obtaining the unpaid overtime wages owed under federal law.

101. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

102. Absent this action, many members of the Putative Classes likely will not obtain redress of their injuries and NZone will reap the unjust benefits of violating the FLSA.

103. Furthermore, even if some of the members of the Putative Class could afford individual litigation against NZone, it would be unduly burdensome to the judicial system.

104. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the Putative Classes and provide for judicial consistency.

105. Hiser's claims are similar to the claims of the other MWD Operators who worked for, or on behalf of, NZone who were classified as independent contractors and paid a day-rate with no

overtime compensation. Hiser and the other MWD Operators like him sustained damages arising out of NZone's illegal and uniform employment policy.

106.    Ace's claims are similar to the claims of the other Directional Drillers who worked for, or on behalf of, NZone who were classified as independent contractors and paid a day-rate with no overtime compensation. Ace and the other Directional Drillers like him sustained damages arising out of NZone's illegal and uniform employment policy.

107.    Hiser and Ace know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

108.    Even if the number of hours worked by the MWD Operators, like Hiser and the Directional Drillers, like Ace, varies, the proof and method for calculating damages is common.

109.    Further, there is no detraction from the common nucleus of liability facts.

### JURY DEMAND

110.    Hiser and Ace demand a trial by jury.

### RELIEF SOUGHT

111.    WHEREFORE, Hiser and Ace pray for judgment against NZone as follows:

   a. For an order allowing this action to proceed as a collective action under the FLSA and directing notice to all MWD Operators who worked for NZone while classified as independent contractors and paid a day-rate during the last three years;

   b. For an order allowing this action to proceed as a collective action under the FLSA and directing notice to all Directional Drillers who worked for NZone while classified as independent contractors and paid a day-rate during the last three years;

   c. For an Order pursuant to Section 16(b) of the FLSA finding NZone liable for unpaid back wages due to Hiser and the MWD Operators like him for liquidated damages equal in amount to their unpaid compensation;

d.  For an Order pursuant to Section 16(b) of the FLSA finding NZone liable for unpaid back wages due to Ace and the Directional Drillers like him for liquidated damages equal in amount to their unpaid compensation;

e.  For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    **Andrew W. Dunlap**
    State Bar No. 24078444
    **Michael A. Josephson**
    Texas State Bar No. 24014780
    **Lindsay R. Itkin**
    Texas State Bar No. 24068647
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    adunlap@mybackwages.com
    mjosephson@mybackwages.com
    litkin@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas State Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

  I served this document by ECF electronic filing on all known parties in accordance with the Federal Rules of Civil Procedure.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

# EXHIBIT 1

**CONSENT TO JOIN WAGE CLAIM**

Print Name: __Dana A Ace_____

1. I hereby consent to participate in a collective action lawsuit against __NZone Guidance_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: __Dana A Ace (Jan 23, 2019)_____   Date Signed: __1-23-2019_____