IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHEN HISER AND DANA ACE, Individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:18-cv-1056 |
| NZONE GUIDANCE, LLC, | § § § | |
| Defendant. | § | |

---

**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

---

Carolyn A. Russell
State Bar No. 24003913
carolyn.russell@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Allen Center, Suite 3000
500 Dallas Street
Houston, Texas 77002
713.655.5771
713.655.0020 (Fax)

Raven R. Applebaum
State Bar No. 24043644
raven.applebaum@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2700 Weston Centre
112 East Pecan Street
San Antonio, TX 78205
210.354.1300
210.277.2702 (Fax)

**ATTORNEYS FOR DEFENDANT
NZONE GUIDANCE, LLC**

# DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

Defendant NZone Guidance, LLC ("NZone" or "Defendant") files this Motion to Dismiss and Compel Arbitration ("Motion") and respectfully requests that this Court dismiss Plaintiffs' claims with prejudice and compel arbitration for the reasons below.

## I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff Steven Hiser filed his Original Complaint December 7, 2018, asserting misclassification and unpaid wages FLSA claims against NZone on behalf of himself and a putative class of MWD Operators.[1] This Court entered an Order Extending Defendant's Time to File an Answer on January 9, 2019.[2] On January 18, 2019, NZone filed its Original Answer to Plaintiff's Original Complaint.[3] An Unopposed Motion for Leave to file an Amended Complaint to add an additional named plaintiff as well as an additional proposed putative class was filed by Hiser on January 29, 2019.[4] The Court granted the motion on January 30, 2019,[5] and Plaintiffs' First Amended Complaint adding plaintiff Dana Ace ("Ace") and additional proposed putative class of Directional Drillers was deemed filed that same day.[6] NZone filed its Answer to Plaintiffs' First Amended Complaint on February 13, 2019.[7] Plaintiffs subsequently filed a Motion for Conditional Certification that same day.[8] NZone now timely files this Motion.

---

[1] *See* Docket No. 1.
[2] Text-only entry generated by the Court entered on January 9, 2019.
[3] Docket No. 9.
[4] Docket No. 4.
[5] Text-only entry generated by the Court entered on January 30, 2019.
[6] Docket No. 11.
[7] Docket. No. 13.
[8] Docket No. 14.

## II. FACTUAL BACKGROUND

### a. NZone Contracted With RigUp to Obtain Contract Services of Oilfield Professionals.

NZone is an oil and gas services company providing among other things directional drilling and MWD services to oil and gas exploration companies.[9] In order for NZone to be connected to independent professionals to help NZone on potential projects, on September 15, 2016, NZone's President, Brad Vaughn, entered into an a contract with RUSCO Operating, LLC, a wholly owned subsidiary of RigUp, Inc.,[10] titled, "Agreement Between Enterprise & RigUp For Use Of RigUp Service" (the "NZone Agreement").[11, 12] According to its website, RigUp is a workforce bidding platform that is the largest marketplace and provider of labor in the energy industry. By using RigUp's service, NZone was able to propose projects on RigUp's platform for selection by independent professionals, such as the named plaintiffs in this case.[13]

Importantly, the NZone Agreement contains a provision stating that NZone agrees to RigUp's Terms of Service, which were incorporated in the NZone Agreement by reference.[14] Section 24 of RigUp's Terms of Service includes an arbitration clause:

> "a. Generally. In the interest of resolving disputes between you and RigUp in the most expedient and cost effective manner, you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration. Arbitration is less formal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, may allow for more limited discovery than in court, and can be subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. This agreement to arbitrate disputes and regardless of whether a claim arises during or after the termination of these Terms. YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE

---

[9] Exhibit 1, "Declaration of NZone Guidance, LLC President, Brad Vaughn ," at ¶4.
[10] For purposes of this Motion, "RigUp" includes RUSCO Operating, LLC, a wholly owned subsidiary of RigUp, Inc.
[11] Exhibit 1 at ¶5; Exhibit 2 at pp. 27-30.
[12] In order to obtain the NZone Agreement, the independent contractor agreements, and the digital records of signing contained in Exhibit 2 (pp. 1-31), NZone was required to agree to treat the documents as confidential.
[13] Exhibit 1 at ¶6.
[14] Exhibit 2 at p. 28, ¶11.

2
DEFENDANT'S MOTION TO DISMISS
AND COMPEL ARBITRATION AND BRIEF IN SUPPORT THEREOF

TERMS, YOU AND RIGUP ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.[15]

### b. Plaintiffs Signed Agreements to Arbitrate Any and All Disputes Arising from Their Services Procured With RigUp.

Like NZone, Hiser and Ace also sought to use RigUp's labor platform to offer their services. In order to do so, they entered into separate contracts titled "Agreement Between Independent Professional & RigUp for Use of RigUp Services" (the "Agreements") with RUSCO, too.[16] Through the Agreements, Hiser and Ace represented under perjury of law that they were independent contractors and were able to provide the professional services to companies like Nzone generally described in Plaintiffs' First Amended Complaint.[17]

Just like the NZone Agreement, the Agreements also contained a provision stating that the Plaintiffs agreed to RigUp's Terms of Service, which were incorporated in the Agreements by reference.[18] Importantly, Section 24 of RigUp's Terms of Service not only contains the same arbitration clause as the NZone Agreement (above), it also contains a class action waiver stating in relevant part:

> "f. No Class Actions. YOU AND RIGUP AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFFS OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and RigUp agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding."[19]

Additionally, each of the opt-in plaintiffs also entered in agreements with RigUp that incorporated RigUp's Terms of Service and includes the same arbitration clause and class waiver.[20]

---

[15] Exhibit 2 at pp. 44-46 ¶24.
[16] Exhibit 2 at pp. 1-10.
[17] *Id.* at ¶9.
[18] Exhibit 2, pp. 31-47 (Available at: https://www.rigup.com/tos).
[19] *Id.* at p. 44, ¶24(f). The Supreme Court of the United States recently upheld class action waivers in arbitration agreements. *Epic Systems Corporation v. Lewis*, Supreme Court of the United States, Nos. 16-285, 16-300, 16-307 (May 21, 2018).
[20] Exhibit 2 at pp. 11-26.

### c. The Arbitration Agreement Covers the Claims Asserted by Plaintiffs.

Through the First Amended Complaint, Plaintiffs assert individual and collective claims on behalf of themselves and all others similarly situated against NZone for violation of the FLSA by failing to compensate Plaintiffs and other similarly situated employees at the rate of one and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek.[21] Plaintiffs also claim that:

- NZone and third-party entities who staffed oilfield personnel to NZone to work for or on its behalf jointly determined and shared control over the terms and conditions of Plaintiffs [alleged]employment;[22]

- NZone and third-party entities who staffed oilfield personnel to NZone to work for or on its behalf jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to Plaintiffs; and

- NZone is a joint employer of the oilfield personnel staffed to it by the third-party entities.[23]

Each of these causes of action arise from Plaintiffs relationship with RigUp and NZone, and thus are subject to the arbitration agreement. More specifically, Plaintiffs and RigUp agreed to arbitrate all claims *arising out of or relating to* any aspect of RigUp's Terms of Service, whether the claims were based in contract, tort, statute, fraud, misrepresentation, or any other legal theory.[24] Plaintiffs also waived their right to proceed on a class or collective basis.[25]

---

[21] Docket No. 11 ¶87.
[22] NZone denies it employed Plaintiffs.
[23] Docket No. 11 ¶¶35-37.
[24] See Exhibit 2, p. 44 ¶24(a).
[25] *Id.* at ¶24(f).

4

## III. LEGAL ARGUMENT

### a. Dismissal is appropriate because Plaintiffs' claims are subject to mandatory arbitration.

#### i. Standard for enforcement of arbitration agreements.

Arbitration agreements are enforceable under the Federal Arbitration Act ("FAA") and are strongly favored under both federal and state policies.[26] The FAA's provisions are mandatory, and courts must compel arbitration when a valid arbitration agreement exists.[27] The FAA provides that pre-dispute arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[28] The Supreme Court has noted that the purpose of the FAA is "'to reverse the longstanding judicial hostility to arbitration agreements ... and to place [them] upon the same footing as other contracts.'"[29] Accordingly, there is a strong presumption in favor of arbitration, and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.[30]

In adjudicating a motion to compel arbitration under the FAA, courts generally conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question.[31] This determination involves two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that arbitration agreement.[32] When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally ... should apply ordinary state-law principles that govern the formation

---

[26] 9 U.S.C. § 2; *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 217 (1985); *Moses H. Cone Memorial Hosp. v. Mercury Cosntr. Corp.*, 460 U.S. 1, 24 (1983); *In re Halliburton Co.*, 80 S.W.3d 566, 572-73 (Tex. 2002).
[27] See 9 U.S.C. § 3.
[28] 9 U.S.C. § 2.
[29] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (*quoting Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).
[30] *Gilmer*, 500 U.S. at 26.
[31] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995); *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992).
[32] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

of contracts."[33] In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration."[34]

Dismissal of a case under, rather than a stay pending arbitration, is appropriate when all of the issues raised in the district court must be submitted to arbitration.[35] Because all of the claims asserted by Plaintiffs fall within the scope of the arbitration agreement, the court has no lingering duty to review the arbitration award once the proceedings are concluded.[36] Under these circumstances, this case should be dismissed with prejudice rather than stayed.[37]

### ii. Plaintiffs have entered into valid and enforceable agreements to arbitrate their claims in this case.

Plaintiffs allege in their Amended Complaint that they were jointly employed by both NZone and third-party entities that staffed the oilfield personnel such as MWDs and Directional Drillers, and their FLSA claims stem from this alleged employment.[38] Plaintiffs' FLSA claims in this litigation fall squarely within the scope of the arbitration agreement because they are based entirely on claims that they were not compensated adequately for the services they provided to NZone that they procured through the use of the agreement.

To the extent Plaintiffs may argue that NZone cannot seek to enforce their arbitration agreements as a nonsignatory, the United States Supreme Court explicitly rejected any argument that only a signatory can enforce an arbitration provision under the FAA.[39] For example, traditional

---

[33] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).
[34] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).
[35] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1991); *Shanks v. Swift Transp. Co.*, No. L–07–55, 2008 WL 2513056, at *12 (S.D.Tex. June 19, 2008) (noting that where all issues in the case are submitted to arbitration, "a court may dismiss the action with prejudice, as 'retaining jurisdiction and staying the action will serve no purpose'") (quoting *Alford*, 975 F.3d at 1164).
[36] *See Alford*, 975 F.2d at 1164.
[37] *See Shanks*, 2008 WL 2513056, at *12 (holding that if the party requesting arbitration seeks dismissal, the case should be dismissed with prejudice ).
[38] *See* Docket No. 11 at ¶31. NZone denies that it is either a proper party in this case or a joint employer of Plaintiffs. But, even if it was, as alleged by Plaintiffs, Plaintiffs can only proceed with their claims in arbitration, not in court.
[39] *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009).

6
DEFENDANT'S MOTION TO DISMISS
AND COMPEL ARBITRATION AND BRIEF IN SUPPORT THEREOF

principles of state law may allow an arbitration contract to be enforced by nonparties through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.[40]

The Fifth Circuit Court of Appeals also held that "pursuant to an equitable estoppel doctrine, a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory Plaintiffs."[41] This is particularly true when the Plaintiffs' allegations against the defendant are "intertwined with" or "dependent on" the contract containing the arbitration provision.[42] Equitable estoppel may be warranted to compel arbitration when, for example: (1) the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract, or (2) the signatory containing the arbitration clause must rely on the terms of the written agreement in asserting their claims against the nonsignatory.[43] Courts may also consider the fairness of permitting a Plaintiffs to proceed in litigation, which is "generally far more costly in terms of time and expense," when the Plaintiffs had previously agreed to arbitrate the exact same type of dispute with a signatory through less expensive arbitration.[44]

As the Fifth Circuit Court of Appeals explained, the "linchpin for equitable estoppel is equity—fairness" and "to not apply this intertwined-claims basis to compel arbitration would fly in the face of fairness."[45] This is especially true when "the Plaintiffs is seeking to avoid that

---

[40] *Id.*
[41] *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 526 (5th Cir. 2000).
[42] *Id.*
[43] *Id.* (citing *MS Dealer Svc. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (abrogated on other grounds)); *see also Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed. Appx. 475, 476 (11th Cir. July 20, 2010) (holding that equitable estopped requires a signatory to arbitrate claims against a nonsignatory when those claims are inextricably intertwined with arbitrable claims against a signatory); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010) (Holding that because Plaintiffs claims against nonsignatories were indistinguishable from claims against signatories, they were estopped from avoiding arbitration).
[44] *Id.*
[45] *Grigson*, 210 F.3d at 528.

7
DEFENDANT'S MOTION TO DISMISS
AND COMPEL ARBITRATION AND BRIEF IN SUPPORT THEREOF

agreement by bringing the action against a non-signatory" but not against a signatory with whom the non-signatory allegedly acted in concert.[46]

That is exactly what has happened here. Plaintiffs alleges in their Amended Complaint that they were jointly employed by both signatory "third-party staffing companies" (RigUp) and nonsignatory NZone, and all of their FLSA claims stem from their allegations that they were improperly paid for such work. Yet Plaintiffs intentionally chose to bring suit against NZone and not RigUp in an obvious attempt to avoid compliance with their arbitration agreements. All the claims Plaintiffs have asserted against one alleged joint employer are inextricably intertwined with Plaintiffs' potential claims against the other. Additionally, Plaintiffs' claims that they were misclassified as an independent contractor will necessarily require interpretation of the agreement that they signed to provide those same services.

Plaintiffs should not be permitted to circumvent their mandatory and exclusive arbitration agreements merely because one of their two alleged "joint employers" is a nonsignatory. Equity therefore favors arbitration of Plaintiffs' claims, and this Court should dismiss Plaintiffs' First Amended Complaint and compel arbitration.

### iii. Plaintiffs' claims should be compelled to arbitration based on the theory of direct-benefits estoppel.

Plaintiffs' claims should also be compelled to arbitration based on the theory of direct-benefits estoppel. But for the Agreements through RigUp, Plaintiffs would not have provided services to NZone. Plaintiffs' claims, however, are premised on them being incorrectly classified pursuant to the terms of the Agreements.[47] Thus, Plaintiffs' joint-employer theory gives rise to direct-benefits estoppel.

---

[46] *Id.*
[47] *Jody James*, 547 S.W.3d at 637.

Under Texas law, direct-benefits estoppel generally requires that a signatory arbitrate claims that derive from that party's contract containing an arbitration clause. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (per curiam). A party cannot both "knowingly exploit[] the agreement containing the arbitration clause" and avoid the arbitration clause's requirements. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)) (quotation marks omitted). If liability on a claim derives from statutory or general obligations imposed by law, however, direct-benefits estoppel does not require the signatory to arbitrate that claim. *Id.*; *Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co., Inc.*, 475 S.W.3d 436, 442 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

In analyzing direct-benefits estoppel, courts have found that "[t]he keys are whether the nonsignatory demanded and received substantial and direct benefits under the contract containing the arbitration clause, by suing the signatory under that contract or otherwise; the relationship between the claims to be arbitrated and the contract; and whether equity prevents the nonsignatory from avoiding the arbitration clause that was part of that contract." *Wood v. PennTex Res., L.P.*, 458, F. Supp. 2d 355, 371 (S.D. Tex. 2006). When as here, the party opposing enforcement of an arbitration clause is a signatory, the same analysis applies. *See, e.g., id.* at 370; *see also Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) ("[S]ometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa.").

There is no question that Plaintiffs received direct benefits from the Agreements. The Agreements provided them the opportunity to bid on work and provide professional services to companies that also utilized RigUp, like NZone. Furthermore, Plaintiffs' First Amended Complaint also supports that they received benefits from the Agreements and the incorporated Terms of Service since they allege that NZone and third-party entities (RigUp) shared control over

DEFENDANT'S MOTION TO DISMISS
AND COMPEL ARBITRATION AND BRIEF IN SUPPORT THEREOF

the terms and conditions of the alleged employment, supervised and controlled, jointly hired and fired, set pay, determined hours, and approved time sheets for the Plaintiffs.[48] Even though the First Amended Complaint does not mention the Agreements, to prove their claims against NZone, Plaintiffs must nevertheless rely on the Agreements.

Additionally, in *Rachal v. Reitz*, 403 S.W.3d 840 (Tex. 2013), the Texas Supreme Court concluded that a trust beneficiary's suit to remove a trustee was subject to arbitration even though the beneficiary was not a signatory to the trust agreement containing the arbitration clause. *Id.* at 847–48. In that case, the court explained that "a beneficiary who attempts to enforce rights that would not exist without the trust manifests her assent to the trust's arbitration clause." *Id.* at 847. Although the beneficiary's complaint made no contract claim, her suit depended on proving violations of the trust. *Id.* at 847–48.

The facts here are similar to *Rachal*. Plaintiffs allege that NZone was their employer that misclassified him as an independent contractor. To prove that they are NZone employees with the right to overtime payments from NZone, they must rely on their Agreements with RigUp, and the incorporated Terms of Service. As noted above, Plaintiffs allege NZone and RigUp shared control over the terms and conditions of the alleged employment. Plaintiffs' right to use RigUp services to procure projects are also defined through the Agreements and the incorporation of RigUp's Terms of Service.

Finally, other courts have concluded that direct-benefits estoppel can permit a nonsignatory defendant to enforce an arbitration agreement against a signatory plaintiff bringing an FLSA claim. *See e.g. Randle v. Metropolitan Transit Authority of Harris County*, 4:18-cv-01770 (S.D. Texas)(October 1, 2018)(Judge Rosenthal)(compelling arbitration in an FLSA misclassification case against a nonsignatory where plaintiff derived the benefit of the contract containing an arbitration

---

[48] Docket No. 11 ¶¶34-37. NZone denies it employed the Plaintiffs.

clause). Because the FLSA is not "a statute that entitle[s] employees to additional compensation regardless of whether the employees have a contract with their employer, and regardless of the contract's terms," a plaintiff making an FLSA claim must invariably rely on any employment agreements that exist. *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1175 (D. Colo. 2016) ("[A]n arbitrator will need to examine and interpret the . . . Agreements to determine whether Plaintiffs' claims implicate or are affected by those Agreements. Thus, Plaintiffs' FLSA claims are intertwined with their employment agreements.") (citations omitted)). Since Plaintiffs must rely on the Agreements and the incorporated Terms of Service with RigUp to prove their case, NZone should be able to compel arbitration of this FLSA suit under the direct-benefits estoppel theory.

### iv. *Plaintiffs' Claim Clearly Fall Within the Scope of the Arbitration Agreement.*

In *Moses H. Cone Mem. Hosp.*, the Supreme Court held "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp.*, 460 U.S. 1, 24-25 (1983); *see also OPE Int'l LP v. Chet Morrison Contrs., Inc.*, 258 F.3d 443, 445 (5th Cir. 2001). Courts interpret arbitration clauses requiring arbitration of disputes "arising out of" a contract more narrowly than those requiring arbitration of disputes "related to" or "connected to" the contract. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). "Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.*

The arbitration clauses incorporated into the Agreements are broad as they require all claims arising out of or relating to any aspect of the Terms of Service, whether based in contract,

tort, statute, fraud, misrepresentation, or any other legal theory, to be arbitrated.[49] Plaintiffs allege in their Amended Complaint that they were jointly employed by both NZone and third-party entities, and their FLSA claims stem from this alleged employment.[50] Since Plaintiffs' FLSA claims in this litigation have a significant relationship to the Agreements, their claims must be arbitrated.

## IV. CONCLUSION

Because all of their claims in this litigation are subject to mandatory arbitration, NZone respectfully requests that this Court dismiss Plaintiffs' claims with prejudice and compel arbitration.

---

[49] Exhibit 2 at pp. 44-46 ¶24.
[50] *See* Docket No. 11 at ¶31.

Respectfully submitted,

/s/ *Raven R. Applebaum*
Carolyn A. Russell
State Bar No. 24003913
carolyn.russell@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Allen Center, Suite 3000
500 Dallas Street
Houston, Texas 77002
713.655.5771
713.655.0020 (Fax)

Raven R. Applebaum
State Bar No. 24043644
raven.applebaum@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2700 Weston Centre
112 East Pecan Street
San Antonio, TX 78205
210.354.1300
210.277.2702 (Fax)

**ATTORNEYS FOR DEFENDANT
NZONE GUIDANCE, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael A. Josephson
Lindsay R. Itkin
Josephson Dunlap, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
mjosephson@mybackwages.com
litkin@mybackwages.com

/s/ *Raven R. Applebaum*
Raven R. Applebaum